GEORGE STRONG V. THE STATE.

No. 22040. Delivered April 8, 1942.

The opinion states the case.

*J. R. Duran,* of Carthage, and *J. R. Anderson,* of Center, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is passing a forged instrument. The punishment assessed is confinement in the State penitentiary for a term of two years.

Appellant's first complaint is of the action of the trial court in overruling his motion to quash the indictment which, omitting the formal parts thereof, reads as follows:

" * * * that heretofore, to-wit, on or about the 17th day of April, 1940, in the County and State aforesaid, GEORGE STRONG, did willfully and knowingly and fraudulently pass as true to A. J. Holmes, a forged instrument in writing to the tenor following:

> Bill No. _____
> Warrant No. 22421
> Amount _____ $264.00.
> "Payable to George Strong out of Precinct No. 1 fund.

"Allowed by Commissioners' Court in open Court, ordered paid out of the above named fund and on date account is recorded in 'Minutes of Accounts approved and allowed of Commissioners' Court' under the signature of the County Judge and attested by the County Clerk.

> "Approved 4/17/1940.
> "(Sig) W. S. Crawford, County Judge.

"Which said written Instrument appeared on its face and purported to be an order of the Commissioners' Court of Panola County, Texas, allowing an account in favor of George Strong against Panola County, Texas, to-wit, against the fund of Precinct No. 1 of Panola County, Texas, in the sum of $264.00 and ordering the payment thereof by said Court and signed by the duly elected, qualified and acting County Judge of Panola County, Texas, and presiding officer of said Court, to-wit, W. S. Crawford, and would have, if said order and instrument had been genuine, have established a claim against the said County, to-wit, against the Road and Bridge Fund of Commissioners Precinct No. 1 of Panola County, Texas, which said George Strong then and there knew to be forged, and did then and there so pass the same as true to the said A. J. Holmes, County Clerk of said County with intent to injure and defraud," etc.

Appellant's main contentions seem to be: (a) that the instrument set out in the indictment is not a subject of forgery;

(b) that there is a fatal variance between the tenor and the purport clause thereof; and (c) that the purport clause fails to allege that it purports to be an order of the Commissioners' Court at which a quorum was present and that their action was entered upon the minutes of said court, etc.

The purport clause of the indictment charges that the written instrument purports to be an order of the Commissioners' Court of Panola County, Texas, allowing the account in favor of George Strong against said county in the sum of $264.00. If this had been a genuine order of the Commissioners' Court and the county clerk had refused to issue to appellant a draft in his favor drawn on the county treasurer of the county, there is no doubt in our mind that appellant could have, by mandamus proceeding, required the clerk to do so. If we are correct in this conclusion, and we think we are, then the instrument· set out in the indictment is a subject of forgery.

Now, with reference to the question of variance, it is our opinion that no such variance exists between the tenor and the purport clause of the indictment as would vitiate the same. Of course, there are explanatory averments therein, but they are not at variance with nor contradictory of the tenor clause. Therefore, his contention is untenable.

With reference to the contention that it is not averred in the purport clause that a quorum of the Commissioners' Court was present when the order was made, we deem it sufficient to say that it does aver that it purports to be an order of the Commissioners' Court, which means an order made by a quorum of said court. It could not be an order of the Commissioners' Court unless a quorum thereof was present when the order was entered.

Appellant next challenges the sufficiency of the evidence to justify and sustain his conviction. The evidence adduced by the State, briefly stated, shows that W. S. Crawford was County Judge and A. J. Holmes was the County Clerk of Panola County at the time the alleged offense was committed; that on or about the 18th day of April, 1940, George Strong, (the appellant) came to the County Clerk with an account against Panola County in the sum of $264.00 for 1,100 pounds of grease at 9¢ per pound; 220 gallons of oil at 45¢ per gallon, and 3,000 feet of lumber at $22.00 per thousand feet, the total amount of which was $264.00. On this account there appeared the order of the

Commissioners' Court of Panola County which is set out in the indictment and charged to be a forgery.

The County Clerk testified that when the instrument was presented to him by appellant he believed that the signature of W. S. Crawford, County Judge of Panola County, appearing thereon was genuine, or he would not have issued a warrant to appellant in payment thereof; that he had seen the County Judge's signature many times, was familiar with it, and believed it to be his signature; but after he heard that the signature had been denied, he looked at it again and reached the conclusion that the initials "S" and "W" did not look like they had been made by the County Judge, but that the name "Crawford" was genuine in the opinion of the witness.

W. S. Crawford, the County Judge whose name is charged to have been forged, testified in substance as follows:

"As to whether I signed that instrument, the 'W. S. Crawford,' I can't make that 'd.' I do not recognize that as my signature. I did not authorize anybody else to sign my name to that order. I did not authorize George Strong to sign my name to that instrument. I have no recollection of ever signing an order approving an account to George Strong bearing that date in the sum of $264.00. * * * When an account was presented to the Commissioners' Court and approved it would be like this. Of course the clerk would be present and he would record it on the minutes."

On cross-examination he testified:

"I am not an expert on handwriting. I wasn't so sure, but I have found that I can't make that 'd' in that instrument (meaning the one in question). That is not the only flaw I find in my signature there; there is more. * * * I don't think I can make the 'S'; the 'W' looks mighty like my signature. It was a puzzle to me before I could really make out that 'd' and I find that I cannot make it. That 'd' is the thing that causes me to doubt that signature more than any other letter in it. * * * I say the 'W' looks like my 'W,' made in a hurry. Looking at the 'S,' I wouldn't say that wasn't my 'S.' I would not say that is my signature by looking at it. * * * That 'C' doesn't look like my 'C.' I just never have put that hook on the 'C.' * * * I am not saying that the 'r' is mine. I would really say that none of it is mine, to the best of my knowledge. * * * That 'a' looks like my 'a' in some of my writing. The 'W' doesn't look like I made it; it is different. Since I have looked at it, it all looks

different. The first time I saw it I thought it was mine, but after they were taken out and handled I began to question whether or not I had signed it. * * * The morning that they asked me if I had approved the bill of $264.00, I could not say what was wrong with that 'A.' It does look like my 'W.' That does not look like my 'f' or 'o.' * * * I have told you to the best of my knowledge I didn't sign it and that is as far as I can go. * * * I wouldn't swear positively that is not my signature on there, in a hurry. I would not attempt to do it. * * * To the best of my knowledge I did not sign it. Those instruments which are marked 'RB' all look like my signature and I believe they all bear my signature."

Some 200 written instruments marked "RB" and 100 marked "RA," each bearing the signature, "W. S. Crawford," were offered in evidence for comparison of handwriting.

Mrs. Mildred Willis testified that she had been employed in the County Judge's office from January, 1939, until September 15th of this year, (1941); that she was familiar with the signature of Judge Crawford; that she saw him sign his name many times; that in her judgment, the signature to the instrument in question was not that of Judge Crawford; that she did not ever see him make an "S" like that, and there usually was a break between the "C" and the "r." In fact, it does not resemble his signature at all. The only letter that looks like his at all is the "f."

The State recalled Judge Crawford, showed him another account in favor of appellant and against the county in the sum of $220.00, bearing a similar order as the one in question, and inquired of him if that was his signature which appears thereon, to which he replied that to the best of his knowledge, it was not his signature. The instrument, together with the order thereon purporting to have been made by the Commissioners' Court and signed "W. S. Crawford" was then introduced in evidence.

Appellant did not testify or offer any affirmative evidence.

It is true that the County Judge testified that he would not positively swear that it was not his signature, but to the best of his knowledge, he did not sign it. He gave his reason why it appeared not to be his signature. There was testimony from other sources that the signature to the order in question did

not appear to be that of Judge Crawford. Moreover, other documents bearing the genuine signature of Judge Crawford were offered in evidence for comparison of handwriting to the jury. We do not believe that under the evidence above stated, we would be justified in holding it insufficient to establish appellant's guilt beyond a reasonable doubt, provided the alleged forged instrument was legally admissible in evidence, which will be discussed here later on. The jury had before them various documents bearing the genuine signature of Judge Crawford for comparison with the signature in question, which we have not, and if from all the evidence before them, they were convinced, beyond any reasonable doubt, of appellant's guilt, we would not be justified in disturbing their finding.

Appellant's next contention is that there is a variance between the tenor clause of the indictment and the proof in support thereof. The instrument, as set out in the indictment, and that sought to be introduced appear upon their face to be in every respect identical. However, it does appear from the bill of exception that while the County Clerk was on the witness-stand and after he had identified the instrument in question as the one which appellant passed to him and when the State offered to introduce it, appellant asked for permission to inspect it and interrogate the clerk as to whether or not the numbers "22,421" appeared thereon after the words "Warrant No." at the time it passed to him. In response to said inquiry, the clerk replied that he inserted the numbers after appellant had passed it to him and after he had issued the warrant in payment thereof. Appellant then objected to its introduction in evidence on the ground of variance, which objection was overruled, to which ruling he promptly excepted. It appears from the testimony of the clerk that the instrument set out in the indictment is not an exact copy of the forged instrument actually passed, by reason of which appellant claims there is a fatal variance. It seems to be the settled rule in this State and in a great many other states, that when an alleged forged instrument is set out in the indictment according to its tenor, the strictest proof is required, and this is furnished only by an exact copy. Such is the holding of this court in the following cases: Baker v. State, 14 Tex. Cr. App. 332; Fischl v. State, 54 Tex. Cr. R. 55, 111 S. W. 410; Harvey v. State, 132 Tex. Cr. R. 213, 104 S. W. (2d) 26; Simmons v. State, 61 Tex. Cr. R. 7. Therefore, under the authorities cited, we feel constrained to sustain appellant's contention

In the event of another indictment, the subsequent insertion of the numbers in the order should be explained by proper averments.

All other claimed errors not specifically discussed herein are overruled.

From what we have said, it follows that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.